32 C.C.P.A. (Patents)

## In re KRONQUEST.

### Patent Appeal No. 4930.

Court of Customs and Patent Appeals.
Jan. 4, 1945.

Mason & Porter, of Washington, D. C. (Charles J. Diller, of Washington, D. C., of counsel) for appellant.

W. W. Cochran, of Washington, D. C. (E. L. Reynolds, of Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, JACKSON, and O'CONNELL, Associate Judges.

BLAND, Associate Judge.

From a decision of the Board of Appeals of the United States Patent Office, affirming that of the Primary Examiner in rejecting claims 1, 2, 4, and 6 to 12, inclusive, of appellant's application for a patent relating to a method of preparing can body blanks, appellant has here appealed.

Claim 1, the broadest of all the appealed claims, is illustrative and reads as follows: "1. The method of preparing black plate stock for can formation which comprises, applying a permanent non-metallic protective coating to a face of black plate stock over all portions thereof to the exclusion of narrow continuous marginal edge portions adapted to be formed into a side seam in the formation of the can body, and electrodepositing a tin plating on the uncoated portions of said blank."

The alleged invention is described, we think properly, in the statement by the Examiner as follows:

"Applicant's invention relates to the art of making or preparing can body blanks. It is said that it had been customary heretofore, to form cans of tin plate, one purpose being to facilitate soldering of the can seams. Also in the packaging of some foods it has been customary even with tin plate to coat interiorly with a varnish, lacquer, enamel or other protective material. In view of the scarcity of tin applicant felt that the provision of tin surfaces at other than the edge portions of the can body blanks results in great wastage of this critical material, and this is particularly so when the non-soldered tin surfaces are covered with the usual protective coatings.

"Applicant's invention seeks to avoid wastage of tin and to provide a method of satisfactorily preparing can body blanks.

His method comprises first applying to the blank a coating of varnish, lacquer, or enamel, leaving bare only the edge portions of the blank intended to be seamed in the making of the can, and then electro-depositing tin on the bare surfaces only."

The references relied upon are: Soderberg, 1,794,929, March 3, 1931; Grupe, 2,-174,071, Sept. 26, 1939.

Claim 1 was rejected as defining nothing inventive or patentable over the disclosure of Grupe, and particularly in view of Soderberg. The Grupe patent shows the coating of cold rolled steel blanks at localized areas by the electrodeposition of tin, the areas to be tinned being substantially the same as those to be tinned by appellant. In the electroplating step, the areas which are not to be tinned are masked by traveling rubber shields. The untinned areas are then coated with a protective lining which overlaps the tinned areas. The overlap provides a complete protection for the metal blank.

The patent to Soderberg relates generally to the fractional electroplating of metal objects. It discloses a process wherein areas of the object which are not to be plated are first covered with an "electrically-insulating substance", such as lacquer, and the article is then subjected to the electroplating operation. The patentee indicates that his insulating coating may be temporary or permanent, depending upon the uses to which the article is to be put.

At this point it will be noted that appellant's process, as defined in claim 1, differs from that of Grupe by a reversal of certain steps in the operation. Appellant applies the protective coating first and then the tin plating, while Grupe applies the tin first and then the protective coating.

It was the view of the tribunals below, as it is ours, that since the result is substantially the same, invention cannot rest in the mere reversal of the steps in the operation; and, as was stated by the examiner, this is particularly true in view of Soderberg, whose patent shows that it is old to first apply a protective coating to those portions of an object to be plated, which are to remain unplated, and then to electroplate the uncoated portions. It was the view of the Patent Office tribunals that to modify the Grupe process in this way was noninventive, and that the process defined by claim 1 introduces nothing new or patentable. We are in entire agreement with this view.

Claim 2 differs from claim 1 in that it calls for an "electricity non-conducting" coating. This element is old as is shown by Soderberg. Claim 4 requires that the coating be applied to both faces and states that the blank acts as a cathode in the tin-plating bath. Grupe, however, coats both faces; and, as stated by the examiner, in any process of electroplating, the article to be plated must act as the cathode. We are in agreement with the views of the Patent Office tribunals as to claims 2 and 4.

Claim 6 calls for a progressive feeding of a continuous ribbon of black plate through the various steps of the process and includes pickling and washing baths prior to the electroplating operation, but the progressive feeding is shown in Grupe and the washing and pickling steps are obviously conventional. It was the view of the tribunals below that the added limitations of this claim, not appearing in claim 1, are matters which are clearly within the skill of the art, and with this conclusion we agree.

Claim 7 was rejected as calling for nothing more than what Grupe fairly shows. The examiner said: "In so far as the step of plating is concerned and the reason for such operation, Grupe's disclosure is deemed fairly anticipatory." It is not seen in what particular claim 7 could be regarded as defining invention if claim 1 does not, and we agree with the tribunals below in the rejection of said claim 7. It is urged that that claim contains the words "permanent protective coating" and that this has a significance relative to patentability. Soderberg, however, indicates that the insulating coating may be permanent, and the Patent Office tribunals regarded the question of permanency or lack of permanency as merely a matter of choice and concluded that that feature therefore does not impart patentability to the claim.

Claims 8 to 10, inclusive, provide for a noncoated area centrally along the blank so that the ribbon of black plate can subsequently be cut longitudinally along the center of the noncoated area, as well as laterally, to form individual can body blanks. However, in one of the figures of the Grupe drawings this feature is emphasized.

Claims 11 and 12, like claim 7, would seem to depend, for patentability, upon the single step of tin plating portions of the blank not protected by an electrically nonconductive coating and upon the term "permanent" which has heretofore been discussed.

The principal argument appellant makes in this court for patentability of his claims over the references is that he eliminates an element which was required in the Grupe process—namely, the rubber masking shields which Grupe uses in the electroplating step before the permanent coating is applied to the blank. However, in view of Soderberg's clear suggestion that the protective coating can be applied prior to the electroplating operation, and that said coating may be permanent in nature, we are unable to see anything patentable in adapting that suggestion to the Grupe process.

Appellant also contends that he effects a saving by eliminating the overlap of the protective coating over the tinned portion of the blank; but, as suggested by the Patent Office tribunals and by the Solicitor for the Patent Office, this may be a disadvantage in that voids would be more likely to occur between the tinned portion and the coated portion. In any event, though appellant argues to the contrary, he has made no showing in the instant record that his method produces advantages over that of Grupe in this respect.

We are in agreement with the holding of the Patent Office tribunals in respect to all the claims on appeal; and we, like the Board, conclude that in view of the disclosures of the cited prior art, the claims define nothing inventive. The decision appealed from is accordingly affirmed.

Affirmed.